UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

INTERLAKE STEAMSHIP CO.,

    Plaintiff,

v.

VANENKEVORT TUG & BARGE, INC.,
et al.,

    Defendants.
_____/

Case No. 2:09-cv-74
HON. TIMOTHY P. GREELEY

## **OPINION**

This case involves a maritime accident in the Marquette harbor located in Lake Superior in or near the channel serving the Shiras Dock. The dock is owned and operated by defendant Marquette Board of Light and Power (MBLP). The channel serves the dock and is maintained by MBLP. On December 7, 2005, the M/V Joyce L. VanEnkevort departed from the dock and went aground near the North side of the channel leaving behind one of the Joyce's rudders which broke off the vessel. This was the fifth time the Joyce had lost a rudder. A new design of smaller rudders was being planned to replace the troubled rudder system on the Joyce. The Joyce proceeded to the LS&I dock, also located in Marquette. A diver, Blake Rieboldt, who is also a Marquette City Police Officer, discovered the damage to the Joyce. After a 45-minute dive in the channel serving the Shiras Dock, the diver was unable to locate the lost rudder sitting on the bottom of the Marquette harbor in Lake Superior. No one from the Joyce reported the grounding or the lost rudder to the United States Coast Guard or to MBLP. The rudder remained hidden in the lake bed until April 21, 2008, or soon after, when it was discovered by divers hired by plaintiff.

Plaintiff Interlake Steamship Company owned the M/V Dorothy Ann, an integrated tug/barge unit similar to the Joyce but navigated by two azipods instead of rudders. On April 21, 2008, the Dorothy Ann was leaving the harbor when it struck an object on the harbor floor causing damage to one of the ship's azipods. The Dorothy Ann was piloted by Captain Gary Schmidt. This was Captain Schmidt's first time piloting a vessel through the Shiras dock channel. Captain Schmidt had been warned by a fellow captain that the channel was shallow on the North side. Deposition of Gary Schmidt, Docket #123-1, at 43. Plaintiff believes that the azipod struck the rudder lost on December 7, 2005, from the M/V Joyce L. VanEnkevort, owned by defendant VanEnkevort Tug & Barge, Inc. Defendant VanEnkevort believes that the Dorothy Ann was negligently piloted and first went aground outside the channel in the same manner as the Joyce previously, causing the azipod to dislodge from the vessel. It is defendant VanEnkevort's theory that the grounding dislodged the azipod which then struck and settled on top of the Joyce's submerged rudder. Defendant VanEnkevort believes that one of the channel buoys had shifted and the channel was not properly marked by defendant MBLP. Further, plaintiff asserts that the channel was not properly marked and that MBLP should have discovered and removed the sunken rudder in the channel before April 21, 2008. In fact, plaintiff's counsel has represented that if the Dorothy Ann moved out through the center of the channel following the fixed channel markers, the Dorothy Ann would have struck one of the green buoys which had moved out to the center of the channel.

It is undisputed that defendant VanEnkevort did not notify the Coast Guard or MBLP about the lost rudder and that the position of the lost rudder was not properly marked to prevent a maritime accident. MBLP argues that the accident was caused by pilot error, by failing to stay within the center line of the marked channel, and by striking the rudder which was embedded in the North

bank of the channel. Further, MBLP asserts that it was not aware of the lost rudder and that MBLP consistently maintained the locations of the channel buoys. Moreover, MBLP argues that an experienced pilot would have known that buoy markers are not reliable due to ice movement in the lake at that time of year and that land surface markings or channel markers were the more reliable navigation tool.

During the night, the Dorothy Ann had backed through the channel to the dock without incident. The accident occurred when the Dorothy Ann was leaving the dock and was making a Southern turn toward the deeper waters of the harbor heading out to Lake Superior. There is some dispute as to whether a green buoy marker was out of its proper position at the time the Dorothy Ann moved away from the dock. Before leaving the dock, Captain Schmidt questioned whether one of the green buoys was in the proper location. A dockhand informed the Dorothy Ann's first-mate that the buoy was properly positioned. Defendant VanEnkevort argues that one buoy was not properly positioned, causing Captain Schmidt to pilot the vessel too close to the Northern bank of the channel. Defendant MBLP asserts that even if the buoy was out of position, MBLP was not negligent because the buoy was clearly in proper position during the night when Captain Schmidt was able to successfully navigate in the darkness through the channel to the dock. MBLP argues that the buoy could only have moved during the short time period between when the Dorothy Ann had arrived at the dock and when she left the dock. Therefore, MBLP argues that it could not have had sufficient time to correct the location of the buoy, if in fact it had moved during the night.

Each party moves for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the [fact finder] could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

        Plaintiff has asserted that defendants acted negligently.  Generally, to succeed on a negligence claim, it is plaintiff's obligation to show duty; breach; causation; and damages.  *Hirsch v. CSX Transp., Inc*, ___ F.3d ___, 2011 WL 3926369 (6th Cir. 2011).  The motions are based upon an interpretation of the parties' version of the facts and the parties' theories regarding a reconstruction of the events that actually took place under water on April 21, 2008, as the Dorothy Ann moved out along the Shiras Dock channel.  Plaintiff argues that defendant VanEnkevort's

spoilation of the evidence defense should be dismissed and that defendant VanEnkevort should be liable for plaintiff's damages as a matter of law. Plaintiff claims that it incurred costs of $1,441,601.50, by responding to the resulting oil spill and repairing the damage to the Dorothy Ann. It was the oil spill from the detached azipod that caused immediate concern because it was important that the oil did not reach the water intake valves at the power plant. Plaintiff acted quickly to recover the azipod and clean the oil spill. Underwater divers discovered that the azipod was entangled with the rudder lost from the Joyce.

Defendant VanEnkevort initially denied that the rudder was from one of its vessels. Plaintiff believes that the initial denial was made in bad faith because VanEnkevort knew that the Joyce had lost a rudder in the Marquette harbor while leaving the Shiras dock. Defendant VanEnkevort had hired a diver to attempt to locate the rudder and Jack VanEnkevort came to the Shiras dock on April 25, 2008, to inquire about the rudder discovered by plaintiff. It is undisputed that VanEnkevort failed in its duty to notify the Coast Guard of the rudder loss, to find the rudder, and to mark the exact location at the time of the loss on December 7, 2005. Further, as to the spoilation of the evidence claim, VanEnkevort was clearly aware of the incident and could have undertaken its own investigation. Although VanEnkevort asserts that it had no knowledge as to the location of the rudder, the Joyce was known to have grounded in the channel upon leaving the Shiras dock and the rudder was discovered missing when the Joyce was docked at the LS&I ore dock, also located in Marquette and not far from the Shiras dock. Plaintiff claims that if VanEnkevort simply complied with the law and properly reported the grounding of the Joyce and the loss of the rudder, the incident on April 21, 2008, would never have happened.

Plaintiff argues that since VanEnkevort failed to comply with its obligation to report the lost rudder, the Pennsylvania Rule applies, shifting the burden of proof to VanEnkevort to show that it could not be liable for the damage to the Dorothy Ann. *Ison v. Roof,* 698 F.2d 294, 297-298 (6th Cir. 1983), *Grosse Ile Bridge Co. v. American Steamship Co.*, 302 F.3d 616, 622 (6th Cir. 2002); *The Pennsylvania,* 19 Wall. 125, 86 U.S. 125 (1873). Plaintiff claims that defendant VanEnkevort failed to notify the Coast Guard of the grounding which occurred and was described by defendant's chief engineer as a "drastic" event. The port main engine needed immediate repair and the port outside rudder was broken off its stock. Plaintiff claims that defendant VanEnkevort's intentional failure to report the lost rudder violated several statutes and regulations. (The failure to report this incident violated 46 C.F. R. § 4.03-1, *et seq.* The Wreck Act, 33 U.S.C. § 409, requires the marking of sunk vessels or other craft. 33 C.F.R § 64.11, *et seq.*, requires the marking of obstructions that constitute a hazard to navigation. The Ports and Waterways Safety Act, 33 U.S.C. § 1221, *et seq.*, requires notification of the Cost Guard of a hazardous condition caused by a vessel.) VanEnkevort agrees, in part, by not disputing that it now has the initial burden to show that their rudder was not the cause of the accident. VanEnkevort believes that it satisfied that burden through expert testimony by showing that the rudder was not the cause of the accident. VanEnkevort argues that the burden shifted back to plaintiff and that plaintiff cannot overcome expert testimony establishing that the rudder was not the cause of the accident.

Defendant VanEnkevort argues that it is entitled to summary judgment based on the undisputed expert testimony of Professor Marc Zupan of the University of Maryland's Mechanical Engineering Department. Professor Zupan has concluded that the rudder could not have been the cause of the azipod breaking off the Dorothy Ann. Professor Zupan has concluded that the azipod

became detached from the Dorothy Ann when the pedestal from the rotating joint of the azipod fractured in a back to front direction. Therefore, according to defendant VanEnkevort, the fracture was consistent with the azipod striking the lake bottom to induce a dragging force which caused the fracture. The fracture, according to defendant VanEnkevort, is not consistent and "scientifically impossible" with a conclusion that the azipod struck the rudder. Defendant argues that since this conclusion is not rebutted by expert testimony, it is entitled to summary judgment. Defendant argues that plaintiff's metallurgist expert, Jason Hertzberg, has not contested expert Zupan's findings or conclusions. Further, defendant argues that this theory is consistent with the clear negligent navigation of the Dorothy Ann when Captain Schmidt steered the vessel into the shallow waters on the North side of the channel while attempting to make a turn out of the channel into deeper waters.

For these same reasons, VanEnkevort argues that it is entitled to summary judgment against MBLP on the cross claims because clearly the Dorothy Ann grounded and MBLP was responsible for not correcting the buoy location and for not notifying Captain Schmidt that the buoy was off course when a MBLP dock worker was asked by a crew member to confirm whether the buoys were on station. Captain Schmidt, after arriving at the dock, thought the green buoys may have been off station and further North into the channel.

Plaintiff claims that there exists no evidence that the azipod ever grounded since there are no markings on the azipod to indicate grounding which would be apparent by scoring on the metal surface. Further, plaintiff states that the direction of the fracture is not relevant because the azipod rotates 360 degrees and there is no way to know for sure what direction the azipod was facing at the time of the fracture. More specifically, plaintiff presents the testimony of former Navy veteran and navigation expert Robert Miller and Captain Vincent DiNapoli, a licensed master mariner. Both

experts testified that any vessel may go anywhere within the unrestricted waters of the lake even outside a marked channel as long as enough water is under the keel.  Further, Captain DiNapoli and expert John Pulson both testified that based upon their observations and inspection of the azipod it could not have grounded because there are no markings in the metal that would indicate grounding. Further, plaintiff points to John Pulson's opinion that the rudder acted as a wedge, causing the failure of the azipod support pedestal.  Plaintiff asserts that this is consistent with Professor Zupan's assessment of the fracture.  Further, plaintiff points out that Zupan never testified or analyzed the causation of the fracture, but that his role was limited to a metallurgical analysis of the fracture site.

      Defendant VanEnkevort argues that Professor Zupan testified that the azipod pedal fractured in a back to front direction.  Defendant VanEnkevort asserts that Professor Zupan also testified that if the azipod hit the rudder, it would have fractured in a front to back direction.  Since the fracture did not occur in that manner, defendant VanEnkevort argues that it is entitled to dismissal from this action based upon this unrebutted testimony which scientifically proves that their rudder could not have been the cause of the loss of the Dorothy Ann's azipod.  Defendant VanEnkevort argues that the testimony of Professor Zupan establishes that the Dorothy Ann grounded and the azipod just happened to dislodge and land on top of the rudder.  Since no party has rebutted this testimony, defendant VanEnkevort asserts that it is entitled to summary judgment and the court should dismiss defendant VanEnkevort from this case.

      Plaintiff asserts that summary judgment against defendant VanEnkevort is appropriate and damages should be awarded to plaintiff.   Plaintiff asserts that it is clear that the Dorothy Ann struck the rudder because there was nothing else in the channel or outside the channel that the Dorothy Ann could have possibly hit.  Further, plaintiff argues that there is no evidence of grounding

on the azipod and expert testimony establishes that the Dorothy Ann did not run aground. Moreover, plaintiff argues that the Dorothy Ann did not navigate into water that was shallow enough to ground the Dorothy Ann.

Exactly what caused the Dorothy Ann to lose the azipod is unclear at this point. Whether the Dorothy Ann struck the rudder or went aground in the same fashion as the Joyce a few years earlier is uncertain and raises a genuine issue of material fact that is not appropriate for summary judgment. Contrary to defendant VanEnkevort's argument, the Court cannot come to a conclusion that Professor Marc Zupan's fracture analysis conclusively establishes that the Dorothy Ann did not strike the rudder. There is some testimony in the record that suggests otherwise, that the Dorothy Ann could not have grounded and could only have hit the rudder. Conversely, the facts could support a finding that the Dorothy Ann did ground causing minimal damage initially to the outside of the azipod and that the azipod then broke off the Dorothy Ann and landed on top of the submerged rudder. Summary judgment as to the cause of the loss of the azipod is not appropriate on this record where there exists genuine issues of material fact that must be analyzed and decided after presentation during a trial.

Plaintiff also moves to dismiss defendant VanEnkevort's spoilation of the evidence affirmative defense. These parties take opposite views of the discovery process in this case both before and after the lawsuit was filed. The spoilation of the evidence claim involves defendant VanEnkevort's position that the rudder and azipod were not available to them for inspection due to the alleged fact that plaintiff never provided a GPS location of the rudder and azipod in the channel.

The Court has the authority to sanction a party for spoilation of evidence through any manner, including dismissal of a case or summary judgment. *Beaven v. United States Department of Justice*, 622 F.3d 540, 544 (6th Cir. 2010).

> Thus, an adverse inference for evidence spoilation is appropriate if the Defendants "'knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction.'" *Hodge v. WalMart Stores, Inc.,* 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Voducek v. Bayliner Marine Corp.,* 71F.3d 148, 156 (4th Cir. 19950). This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction. An obligation to preserve may arise "when a party should have known that he evidence may be relevant to further litigation," *Kronishce v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), but if there was "no notice of pending litigation, the destruction of evidence does not point to consciousness of a weak case" and intentional destruction, *Joostberns v. United Parcel Servs., Inc.,* 166 F. App'x 783, 797 (6th Cir. 2006) (unpublished opinion) (applying federal law). "[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.'" *Residental Funding Corp.*, 306 F.3d at 108 (quoting *Byrnie*, 243 F.3d at 109).

*Id.* at 553-554.

Plaintiff concedes that it acted quickly to locate and remove the azipod from the channel. This action was entirely appropriate for a number of reasons, including to prevent a future maritime accident with another vessel. The azipod was leaking oil. Further, plaintiff planned to recondition the azipod and place it back into service. The azipod was discovered easily due to the trail of rising oil. The rudder and azipod were entangled in such a manner that the rudder needed to be moved first to allow the azipod to be rigged from the bottom for lifting. Clearly, despite initial denials in this case, defendant VanEnkevort knew that they had lost a rudder near or in the channel serving the Shiras Dock and defendant must have reasonably suspected that the rudder plaintiff had

found was likely defendant's lost rudder. It is difficult to believe that defendant VanEnkevort was unaware of the accident or the finding of the rudder, because Jack VanEnkevort came to the MBLP dock and inquired about the rudder on April 25, 2008. Defendant VanEnkevort had the opportunity to find the rudder when it was lost in 2005. Defendant VanEnkevort's failure to report the grounding and the lost rudder is further evidence that they were simply hoping that the rudder was lost forever and would never be found at the bottom of the lake. There exists no evidence which could support defendant VanEnkevort's claim of spoilation of the evidence. In fact, any delays in receiving evidence or information about the rudder or the location where the rudder was found in the harbor could only be the fault of defendant VanEnkevort and not the fault of plaintiff. Moreover, the Coast Guard has maintained the GPS location of where the rudder and azipod were found on the bottom of the harbor. Defendant VanEnkevort had the same opportunity as plaintiff to discover this evidence. The affirmative defense of spoilation of the evidence shall be dismissed.

MBLP argues that it should be dismissed from this case because it has no involvement in causing any damage to the Dorothy Ann. MBLP argues that pilot error caused the accident because proper navigation tools were not used by Captain Schmidt to guide the vessel out of the channel. MBLP argues that simply relying on the buoys during the month of April was error because any experienced captain would know that the buoys commonly were off course due to ice in the bay. MBLP further argues that the rudder from the Joyce was the cause of the accident and MBLP had no knowledge or reason to know that a rudder was dropped from the Joyce in or near the channel. MBLP claims that there was nothing in or immediately outside the channel boundaries that the Dorothy Ann could have hit other than the rudder.

Defendant MBLP moves to dismiss plaintiff's complaint and defendant VanEnkevort's cross claim. Plaintiff alleges that defendant MBLP should be liable because the green navigational buoy was out of place, forcing Captain Schmidt to steer the vessel along the Northern bank of the channel. Plaintiff alleges that MBLP should have discovered the rudder in the channel and would have discovered the rudder if someone from MBLP would have questioned diver/police officer Blake Rieboldt, who conducted a 45-minute dive in the channel in December of 2005 in an attempt to locate the lost rudder on behalf of defendant VanEnkevort. Defendant VanEnkevort argues that defendant MBLP is liable because the green buoy was off station at the time plaintiff's vessel left the Shiras Dock. Both plaintiff and defendant VanEnkevort base their belief that the green buoy was off course on the fact that the Dorothy Ann was navigated along the North bank of the channel. This is undisputed and, in fact, the Dorothy Ann's navigation system, called ECPINS, recorded the departure of the Dorothy Ann and showed that the Dorothy Ann was piloted along the North bank of the channel.

Both plaintiff and defendant VanEnkevort rely upon the testimony of Captain Schmidt that he piloted the vessel along the North side of the channel because he felt the green buoy was not on station, was 100 feet or so North of its usual location, and was too close to the center of the channel. Captain Schmidt also admits that he received advice from another company captain, since this was his first voyage to and from the Shiras dock, that the North side of the channel was shallow. Captain Schmidt also indicated that he never looked at the fixed centerline markers while he piloted the vessel away from the Shiras Dock to determine whether he was inside the center of the channel. At the hearing in this matter, counsel for plaintiff represented that if Captain Schmidt piloted the vessel down the center of the channel, the vessel would have struck the green buoy.

However, that is simply attorney argument and is not supported by anything within the factual record. Clearly, Captain Schmidt could not have known this if he never even looked at the centerline channel markers. Indeed, if that was the case, Captain Schmidt probably should have questioned the dock-hand further, after the dock-hand told Captain Schmidt's first-mate that the green buoys were in proper position.

The record simply does not support the argument that the green buoy was not on station on April 21, 2008. The record shows that an MBLP dock-hand informed Captain Schmidt's first-mate that the green buoy was properly positioned. Further, MBLP monitored and moved the location of the buoys when ice floats moved the buoys off course. In fact, the buoys were reset on April 16, 2008, and April 30, 2008. There exists no evidence which could establish that the buoys were not in proper position on April 21, 2008.

> Captain Richard DiNapoli stated during his deposition testimony:
>
> And [Captain Schmidt] this was his first trip in, and he appears to have done remarkably well considering it was his first trip. He got some advance information, but he - - you have to back into these, and that's not uncommon in places where you cannot turn around.
>
> And it's a backing down into a fairly narrow channel, and that's not the easiest maneuver in the world. He knows enough to use the ranges going in. So he got himself into position, and he backed the vessel.
>
> And noting - - I guess this was around midnight the night before if I remember correctly. Noting that the green buoy looks a little bit closer than I would suspect from what I see on the chart representation.
>
> And then gets the vessel in. Now, coming out for whatever reason, he testified that he didn't use the ranges. And perhaps he assumed or apparently made some inquiry of a dockman, and I don't know why he would do that, as to whether the buoy was in the right spot, when

>you have something as good as a range to determine whether it is or not.
>
>But the point is if the buoy was a little bit off, there appeared to be no impediment to safe navigation the evening before.  So, on the next day if that buoy was now more in his way, if you will, I wonder if it moved more in the overnight period.  I'm not sure they were in the same - - I'm not sure that buoy was in the same place both times.
>
>And that said now, if he thinks it's out of position, it would not be unusual for him, all right, let me stay a little bit closer to the left side going out of here.  I'm not sure the buoy was in the same place both times.

Deposition Transcript, Docket #110-3, at 24-25.  Even if the green buoy was off station at the time the Dorothy Ann left the dock, it appears that the buoy was properly located just a few hours earlier.  Captain Schmidt was able to successfully back the Dorothy Ann to the dock using the centerline markers without any apparent difficulties and without striking a green buoy.  Clearly, MBLP was not on notice that the buoy was off station at that time.  The dock hand stated that the buoy was on station and his statement was apparently accepted by Captain Schmidt.  The evidence of record does not show that the green buoy was too far into the channel to affect a reasonable navigation of the channel.  Similarly, plaintiff asserts that MBLP had a duty to question diver Blake Rieboldt regarding his purpose for diving off the Shiras Dock.  Plaintiff argues that MBLP, by not identifying Blake Reiboldt when he entered the Shiras Dock, not only violated their own security rules, but also violated MARSEC maritime security regulations for secure maritime locations.  Blake Rieboldt testified that he would normally inform MBLP that he intended to dive off the dock simply for his own safety so that boats would not be moving in and out of the area while he was underwater.  However, he was not certain if he had spoken with anyone from MBLP on this occasion, or whether he was questioned while on the dock.  Whether or not MBLP had notice of Blake Reiboldt's dive cannot impose liability on MBLP.  It does not follow that if MBLP knew that Blake Reiboldt was

looking for the lost rudder from the Joyce, that MBLP would have found the rudder, preventing the Dorothy Ann from striking the rudder. Moreover, the simple identification of Police Officer Blake Reiboldt alone could not have discovered the lost rudder. Since Rieboldt did not find the rudder and VanEnkevort did not acknowledge that the rudder likely was lost in the channel, it cannot be expected that MBLP could have or would have found the rudder anytime before the channel was scheduled for dredging.

Accordingly, plaintiff's Motion For Summary Judgment will be granted, in part, dismissing defendant VanEnkevort's spoilation of the evidence defense. Plaintiff's motion will be denied as to the liability and damage issues against defendant VanEnkevort. The Motions For Summary Judgment filed by the VanEnkevort defendants will be denied. Defendant MBLP's Motion For Summary Disposition will be granted.

An order consistent with this Opinion will enter.

  /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 7, 2011